**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PETER ANTHONY GRANDPRE, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO.   16-1541** |
| **NEWELL NORMAND, TIMOTHY BERRIAN,** | **SECTION "J"(4)** |
| **HARRY SILL, J. MAGINITY, BOBBY LEE, JAMES** | |

**PARTIAL REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.   On April 21, 2016, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2]   Upon review of the entire record, the Court has determined that matter can be disposed of without an evidentiary hearing.

**I.     Factual and Procedural Background**

**A.     The Complaint**

The plaintiff, Peter Anthony Grandpre, Jr. ("Grandpre"), was a pretrial detainee housed in the Jefferson Parish Correctional Center ("JPCC") in Gretna, Louisiana, at all relevant times. Grandpre filed this *pro se* and *in forma pauperis* complaint under 42 U.S.C. §1983 against the

---

[1] 766 F.2d 179 (5th Cir. 1985).   The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims.   The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).   *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 11.   The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

defendants, Jefferson Parish Sheriff Newell Normand, Sergeant Timothy Berrian, Deputy Harry Sill, Deputy James McGinty, Sergeant Bobby Lee, and Nurse James.

Grandpre alleges that, on April 25, 2015, he was housed in administrative segregation cell 3A-9.   He claims that, when Sergeant Berrian announced roll call that afternoon, he jumped out of his bunk to go to the restroom and slipped in water on the floor of his cell.   He hit his back and the back of his head.   He asked a cellmate to get him help when he noticed water dripping and running down the wall inside of his cell from a hole in the ceiling.   The fall irritated the pain in his already injured neck and back.

The defendant, Nurse James, came to his cell accompanied by Sergeant Berrian and Deputies McGinty, Sill, and M. Parker.   Nurse James borrowed a black flashlight with sharp spikes from Deputy McGinty.   Nurse James had McGinty and Berrian hold plaintiff's legs and then proceeded to cut the bottom of plaintiff's left foot with the flashlight until it bled.   Grandpre alleges that he yelled out for help, and Deputies Sill and Parker just stood there.

The Nurse told plaintiff to stop resisting and then told him to get up because he was not hurt.   He advised them that he could not get up and Sergeant Berrian and Deputy McGinty picked Grandpre up off of the floor by his arms and legs and dropped him onto the bottom bunk his cell.

Grandpre further alleges that Nurse James then tried to lift his left arm to take his blood pressure.   Grandpre admittedly pulled his arm away and at that time, Sergeant Berrian and Deputies Sill and McGinty applied force with their hands and knees to hold him down.   He also states that they hit his body in the process.

Grandpre also alleges that, when the Nurse left the cell, Sergeant Berrian ordered him to get up and go to cell 4, and Grandpre refused claiming he was in too much pain.   The Sergeant told him again to get up and go to cell 4, and Grandpre again refused.   He claims that Deputy

McGinty and Sergeant Berrian picked him up by his arms and legs and carried him to cell 4 and dropped him on an iron bunk that had no mattress.   Grandpre also claims that he reached up to hold on to Sergeant Berrian's arm and continued to ask for medical treatment for the pain. Grandpre asserts that the Sergeant dropped his arm with force trying to get Grandpre's hand off of him and in that motion, his arm and elbow hit Grandpre's nose and mouth and the Sergeant walked out.

Grandpre further alleges that, following this incident, Deputy Sill moved all of his personal items, including legal mail, from cell 3A and threw them all over the floor in cell 4.   He also put his mattress on the floor by the gate before he left.

After the officers left the pod, Grandpre called out for help and Deputy M. Parker told him he would see what he could do.   He also claims that he asked several inmates to get Deputy A. Winsted to help him because he was bleeding.   Grandpre claims he then crawled on the floor of the cell to get to the gate getting blood on the mattress and floor.   Soon, Nurse Toni, Nurse Christal arrived followed by Sergeant Lee, Sergeant Berrian and Deputy Sill.   Deputy Sill moved the bloody mattress.   Grandpre states that he told her about his injuries and showed her the open wound on his foot.   Nurse Toni cleaned his face and foot, bandaged his foot, and helped him back onto his bunk.   She also put cream on his lip and inside of his nose.   She did not give him pain medication because he would get his regular medicine at pill call.

Grandpre further alleges that he tried to talk to Sergeant Lee about his safety in the jail. She advised him that she was not the ranking officer on his pod and did not want to get involved. As a result, he suffered other injuries that day from the same deputies and sergeant.

Grandpre alleges that, later that day, he was allowed out of his cell for time in the dayroom. He took his medical records and sat at a table in the dayroom to get Deputy Winsted's attention.

3

He asked the deputy for the rest of his personal items out of his old cell and to speak to a ranking officer over Sergeant Berrian.   Deputy Winsted made a call and then told Grandpre that the ranking officer was not coming to see him.

Grandpre claims that he continued to sit at the table until he was ordered by Deputy Winsted to return to his cell at the end of his hour.   Grandpre told Deputy Winsted to call for a ranking officer.   He also indicates that he complained that he needed a mattress because he was in pain.   The deputy made a call and soon Sergeant Berrian arrived accompanied by Deputies E. Glaude, Sill, and McGinty.   Grandpre alleges that Sergeant Berrian told him to get up and go to his cell.   Grandpre got up slowly and as he moved to his cell, he told Sergeant Berrian he was in pain and needed to see a doctor.   He claims that he tried to give Sergeant Berrian his medical records and the Sergeant threw them on the floor and stepped on them.

Grandpre alleges that he asked why the Sergeant did that and the Sergeant punched him in the face with a closed fist.   The deputies dove on him from behind causing him to land on the iron bunk.   He alleges that they bent his hands behind his back, hit him in the head, kicked him, and pressed their knees into his back.   They placed handcuffs on him with a double lock and too tightly.

Grandpre claims that they then grabbed him off of the bunk with McGinty on his left arm and Glaude on his right arm.   Deputy Sill was holding the back of his neck and jumpsuit, pushing him from behind.   He states that the officers escorted him to a hallway towards the medical unit and he yelled for them to let him go.   He claims that Deputy McGinty slammed him against the wall and Deputy Sill started choking him around the neck.   Grandpre admittedly kicked over a food cart trying to get away from the deputies, and Deputy Sill punched him in the face.   Grandpre further alleges that he shouted insults to Deputy Sill.   He states that Deputy McGinty then

slammed him into an orange door causing him to hit his head.   He further states that, during this time, Deputy Glaude was trying to get him to calm down and did not mistreat him.

Grandpre complains that Sergeant Berrian stood by watching these events and did not try to stop the deputies.   Grandpre alleges that he soon was escorted into an elevator where he was pushed into the back wall he was facing.   Upon entering the medical department, he was called in by Nurse Dana and Nurse Toni.   He explained what happened to him.   He continued to insult Deputy Sill and the deputy grabbed him by the neck and chocked him again.   Grandpre claims that no one tried to stop him.

Grandpre alleges that Nurse Toni tried to take his blood pressure to no avail.   He was sent back to his pod and nothing else was done for his injuries.

Grandpre further alleges that, later that day, he saw Nurse Dana at pill call and she was being escorted by Deputy R. Jones.   Grandpre claims that he told Deputy Jones that he did not feel safe on his pod because of the deputies and Sergeant Berrian.   Deputy Jones and Nurse Dana observed the injuries to his face and swollen wrist and hands.   Nurse Dana also looked at his foot. Nurse Dana later called him to medical for more medication and an ice pack.   On the way back to his pod, Grandpre claims that he told Deputy Jones that he needed protective custody or ask for suicide watch.   He and Deputy Winsted had Nurse Gaynell speak with Grandpre and during their talk, she called for Sergeant Berrian to put Grandpre on suicide watch.

Grandpre complains that all of his personal items were removed from his cell and he was left naked to sleep on the iron bed with no mattress.   He claims that he was freezing and still in pain.

Grandpre alleges that, the next day, he spoke with two social workers who had him remain on suicide watch.   The next day, he was seen by another nurse and he was later removed from suicide watch.

He also claims that, on May 12, 2015, his attorney advised him that he would be coming to the jail to bring documents to Grandpre for his criminal trial.   When his attorney never came to visit, Grandpre filed a bar complaint against him.   On August 5, 2015, the lawyer advised the bar association that he attempted to visit Grandpre and was told that he was unavailable due to a medical call.   Grandpre alleges that this act by the prison officials denied him due process and access to his attorney.   He contends that they sent his lawyer away because they did not want him to see that they had beaten him up.   He further claims that he did not see the medical staff for his injuries for twenty-five days following the April 25, 2015 beatings.

Grandpre seeks punitive and compensatory damages for his injuries, pain and suffering, and other emotional and psychological injuries from the alleged beatings.

Grandpre attached to his complaint copies of numerous inmate grievance forms filed with the JPCC officials.   In a grievance form dated April 30, 2015, Grandpre outlined the events occurring on April 25, 2015, similar to the claims asserted in this federal complaint.[3]   On May 7, 2015, a response was issued by Major Olsen refusing the grievance.[4]   The Major indicated that, pursuant to JPCC policy, the matter was being investigated through the disciplinary process.   He also advised Grandpre that one complaint form could only address one not multiple grievances.

---

[3]Rec. Doc. No. 1, pp. 33-35.

[4]Rec. Doc. No. 1, p. 33.

In a grievance form dated May 1, 2015, Grandpre complained about the incidents occurring after his slip and fall on April 25, 2015.[5]   On May 7, 2015, the grievance was refused by Major Olsen as duplicative of another grievance.[6]

In the two grievance complaints dated May 19, 2015, Grandpre asked for medical help for the injuries he received on April 25, 2015.[7]   Both complaints were refused as duplicative by Major Olsen on May 21, 2015.[8]

Grandpre submitted a grievance form dated May 20, 2015, again complaining about the incidents on April 25, 2015, and asking that someone question the nurse who witnessed his injuries.[9]   The grievance was refused by Major Olsen on May 26, 2015, because it was a related to a disciplinary appeal or administrative segregation hearing.[10]

Grandpre repeated the same request in another grievance form dated May 20, 2015, which was refused as duplicative by Major Olsen on May 21, 2015.[11]

In his four grievance forms dated May 21, 2015, Grandpre asserted that he was still suffering from the injuries he received on April 25, 2015.[12]   The complaints were refused by

---

[5]Rec. Doc. No. 1, pp. 28-32.

[6]Rec. Doc. No. 1, p. 28.

[7]Rec. Doc. No. 1, pp. 38, 39.

[8]*Id*.

[9]Rec. Doc. No. 1, pp. 36-37.

[10]Rec. Doc. No. 1, p. 36.

[11]Rec. Doc. No. 1, p. 40.

[12]Rec. Doc. No. 1, pp. 41-42, 43-44, 45-46, 47-48.

Major Olsen on May 26, 2015, because each was related to a disciplinary appeal or administrative segregation hearing.[13]

On August 17, 2015, Grandpre filed an inmate request form in which he requested that the prison officials report on the investigation conducted into the events occurring on April 25, 2015, and address the claims made in his grievance forms.[14]   Grandpre did not provide the resolution of this request.

**B.**      **The *Spears* Hearing**[15]

During the *Spears* Hearing, Grandpre essentially read and repeated almost verbatim his allegations from his complaint rather than independently testify.   Upon answering questions by the Court, Grandpre conceded that on several occasions he did resist the instructions given to him by Sergeant Berrian, the deputies and even the nurses.   He stated that he was not sure why the deputies and Nurse James did not believe he was injured after he slipped and fell on the wet floor. He further stated that Sergeant Lee's failure to entertain his concerns for his safety led to the second incident.   He indicated his belief that if she had helped him, he would not have had to encounter Sergeant Berrian and the other deputies the second time later that same day.

He also reiterated that, when he was eventually taken by Deputy Sill and Deputy McGinty to the medical unit, he told them how he was beaten and injured.   He stated that he was frustrated and told the nurse that Deputy Sill "hit like a bitch," and this prompted Deputy Sill to grab him by

---

[13]Rec. Doc. No. 1, pp. 41, 43, 45, 47.

[14]Rec. Doc. No. 1, pp. 49-50.

[15]The Court notes that Grandpre filed a separate suit, Civ. Action No.16-1543"F"(4), against the medical personnel mentioned in his claims: CorrectHealth Jefferson, LLC, Cindi Lachney, Kelly Harris, Dana McLondon, LRN Toni and LRN James.   The medical indifference and failure to protect claims against the medical personnel have been dismissed with prejudice as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997A.

the neck and choke him.   He testified that nurses saw this happen.   Grandpre further testified that, after Deputy Sill let go, the nurse tried to take his blood pressure and could not get a reading.   He was then taken back to his cell, where he informed the pod deputy that he was in fear for his safety and believed the other deputies would file false reports against him.

Grandpre stated that he asked to be placed in protective custody, which could not be done because he already was in administrative segregation.   Grandpre then asked the deputy to move him to suicide watch, even though he was not suicidal, because he thought he would be sent to the medical unit where he would be in a protected area with cameras.

He testified that the deputy contacted the nurse, and the nurse advised him to call Sergeant Berrian about his safety concerns.   Grandpre stated that, because he perceived Berrian as part of the problem, he refused.   The nurse then placed him on suicide watch.   Grandpre further stated that he was not aware that the suicide watch procedure required that he be returned to his own cell. It also required that his mattress and all of his clothing be removed for his safety.   He stayed in his cell from Saturday until Monday in pain and cold while on suicide watch.   He was eventually removed from suicide watch and the nurses took notes of his injuries and complaints.

Grandpre also testified that he filed multiple grievances about the incident and they were refused because the matter was being investigated by the Security Investigation Unit ("SIU"). SIU officers talked to him on June 26, 2015, and recorded his statement.   He recalled having to sign some papers but he did not know what he signed.   In August of 2015, he appeared before a disciplinary board related to something else, and he asked why he had not received the results of the SIU investigation into the April 25, 2015 incidents.   A female officer told him that it was still under investigation.   He stated that, when it came close to one year passing without a resolution, he decided to file this lawsuit.

Grandpre testified that he named Sheriff Normand as a defendant, because the sergeants and deputies involved worked for him.   He also reiterated that he named Sergeant Berrian, Deputy McGinty, and Deputy Sill as defendants because they were involved in physically restraining him, hitting him and causing his injuries.   He named Sergeant Lee because of her refusal to get involved in his request for protection.   He also indicated that he included Nurse James because he cut his foot with the flashlight.

Grandpre also stated that he eventually received medical care for his injuries about 42 days later when he saw a doctor.   He noted that he was already on pain medication for the injuries he had before he entered the jail.   However, he did not receive any new treatment for his bruises and swelling following the beatings until his lawyer wrote to the warden of the jail.

Grandpre mentioned that he also began to have rectal bleeding after the beating and had concerns that it may have been caused by the deputies' use of force.   He conceded, however, that the issue of his rectal bleeding and the medical care for that and his other injuries were addressed in his other lawsuit against the medical care personnel.

## II.   Standards of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.   The Court has broad discretion in determining the frivolous nature of the complaint.   *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).   However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.    Analysis

### A.    Claims Against Nurse James

Grandpre alleges that Nurse James doubted that he was injured and pressed too hard on his foot with the flashlight cutting the bottom of his foot and causing him severe pain. The claims asserted by Grandpre against Nurse James are identical to the claims he asserted against Nurse James in Civ. Action 16-1543"F"(4). Grandpre all but conceded this during the *Spears* Hearing.

A prisoner civil rights complaint is considered "malicious" for purposes of the Court's review under § 1915 and § 1915A if it duplicates allegations made in another federal lawsuit by the same plaintiff. *See Pittman v. Moore*, 980 F.2d 994, 994 (5th Cir. 1993). The allegations in this suit mimic those against Nurse James already adjudicated in the other lawsuit, Civ. Action 16-1543"F"(4) and which have been dismissed as frivolous and otherwise for failure to state a claim

for which relief can be granted under 28 U.S.C. § 1915 & § 1915A and 42 U.S.C. § 1997e. Grandpre's identical claims against Nurse James in this lawsuit are malicious under 28 U.S.C. § 1915A(b). *See e.g.*, *Wilson v. Lynaugh*, 878 F.2d 846 (5th Cir. 1989) (duplicative claims may be dismissed sua sponte).   The claims against Nurse James must be dismissed.

### B.   Claims Against Sheriff Normand

Grandpre testified that he named Sheriff Normand as a defendant because of his supervisory role over the sergeants and deputies whom he alleges caused him injury.   The claims against Sheriff Normand are frivolous.

A state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation."   *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981) (citing *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980)).   Thus, supervisory officials, like Sheriff Normand, cannot be held responsible pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.   *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability.").   A defendant is liable under § 1983 only if he had personal involvement in the alleged unconstitutional act.   *Douthit*, 641 F.2d at 346.

In this case, Grandpre has not alleged that Sheriff Normand was personally involved in the incidents about which he complains or was personally advised by him of the incidents.   Instead, he named the Sheriff in his supervisory capacity as employer of the deputies.   This is not an appropriate basis for liability under § 1983.

Grandpre has not alleged that he has suffered any injury directly resulting from any order, training, or other policy implemented by Sheriff Normand to create vicarious liability under § 1983 in the Sheriff's supervisory role.   *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).   He therefore has failed to establish a basis for liability against the Sheriff under § 1983.

For these reasons, Grandpre's claims against the Sheriff in his supervisory role over the prison are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

### C.    Claims Against Sergeant Berrian, Deputy McGinty, Deputy Sill and Sergeant Lee

After having the opportunity at the *Spears* Hearing to plead his best case, the Court finds that Grandpre has at least asserted non-frivolous claims against the following defendants.   *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

#### 1.    Excessive Force Claims Against Berrian, McGinty, and Sill

Based on his claims and testimony, Grandpre alleges that Sergeant Berrian and Deputies McGinty and Sill engaged in excessive force against him on multiple occasions on April 25, 2015. He claims that on two occasions, the force was used after he refused their orders to get up and walk around as a result of the pain and injury he suffered when he slipped and fell in water on the floor and after his foot was cut by Nurse James.   He also alleges that one incident of injury occurred after he held Sergeant Berrian's arm and asked the Sergeant to get him medical care. The Sergeant allegedly swung his arm to get away and hit Grandpre in the nose and mouth causing both to bleed.   Another incident occurred after he refused to lockdown because he needed medical care, and the Sergeant punched him.   This resulted in the other deputies tackling him onto the iron

bunk, hitting him, and restraining him with knees and nightsticks and tightened handcuffs.   As he alleges, the force continued when he was being escorted to the medical unit and the deputies shoved him into the walls and choked him.   A final incident occurred in the medical unit when Deputy Sill responded to a derogatory comment by choking Grandpre.   He also asserts that he suffered bruising, swelling, bleeding and persistent pain in his back, neck and head, and possibly rectal bleeding, as a result of these actions.

The United States Supreme Court has concluded that, with respect to a Fourteenth Amendment excessive force claim, a pretrial detainee must show only that the use of force was "objectively unreasonable."   *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2470 (2015) (effectively abrogating the lower federal courts' application to pretrial detainees of the Eighth Amendment excessive force standards in *Hudson v. McMillian*, 503 U.S. 1 (1992)).   The reasonableness of the force turns on "whether the force was unnecessary - not whether the use of force was so unnecessary as to show the requisite state of mind to support an Eighth Amendment excessive force claim."   *Thompson v. Beasley*, 309 F.R.D. 236, 247 (N.D. Miss. 2015); *Brown v. Gusman*, No. 15-1491, 2015 WL 6827260, at *5 (E.D. La. Nov. 6, 2015).

Under the *Kingsley* standards, the question is whether the defendants' actions were "'rationally related to a legitimate nonpunitive governmental purpose'" of maintaining order and discipline in the jail.   *See Thompson*, 309 F.R.D. at 247 (quoting *Kinglsey*, 135 S. Ct. at 2473). The Supreme Court provided some considerations to be addressed by a reviewing court in resolving this question:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *See, e.g., Graham* [*v. Connor*, 490 U.S.

386, 396 (1989)]. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

*Kingsley*, 135 S. Ct. at 2473.

Based on the allegations and testimony from the plaintiff, the Court cannot determine at this point in the litigation whether the force used by the defendants Berrian, McGinty, and Sill was objectively reasonable or necessary under the circumstances. While the plaintiff's allegations may suggest that there was a legitimate need for him to cooperate and to move him to various cells and areas, the need for the restraining measures, including the alleged punches, choking, and "dropping" onto the iron bunk, are not yet clear from the record before the Court. Considering the alleged extent of the plaintiff's injuries and the apparent failure to temper the extent of the force used in light of the limited resistance alleged, the Court cannot find at this time that Grandpre's claims of excessive force are clearly frivolous. For this reason, the Court should allow the excessive force claims against these defendants to proceed forward.

## 2.   Failure to Intervene Claim Against Berrian

Grandpre alleges that during one incident, Sergeant Berrian stood by and watched the deputies beat him and restrain him on the iron bunk and did nothing to intervene in the deputies' use of excessive force.

Under a theory of bystander liability, a prison official who does not personally exert excessive force on a pretrial detainee can still be held liable for failing to protect the pretrial detainee from another's use of excessive force. *See*, *e.g.*, *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force [under the Fourth Amendment] may be liable under section 1983.") (citations omitted). Bystander liability for the failure to protect applies if the officer "(1) knows that a fellow officer is violating an individual's constitutional

rights, (2) has a reasonable opportunity to prevent harm, and (3) chooses not to act." *Nazerzadeh v. Harris Cnty.*, No. H-08-0499, 2010 WL 3817149, at *33 (S.D. Tex. Sep. 27, 2010) (citing *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 203-04 (4th Cir. 2002)); *see also*, *Garza v. U.S. Marshals Serv.*, No. B-07-052, 2008 WL 501292, at *3 (S.D. Tex. Feb. 21, 2008) ("The officer must have had a reasonable opportunity to recognize the occurrence of excessive force and a reasonable opportunity to stop the use of force."). Such liability implicitly requires the presence of the officer at the scene of the alleged constitutional violation. *See*, *e.g.*, *Hale*, 45 F.3d at 919 (requiring officer to be "present at the scene" to be held liable as bystander). The rationale motivating bystander liability is that "a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." *Terrell v. Castleberry*, No. H-06-2025, 2008 WL 687519, at *5 (S.D. Tex. Mar. 12, 2008) (citing *Randall*, 302 F.3d at 204 n.24).

For the court to assess whether Sergeant Berrian failed to protect the plaintiff during the incident in cell 4 as described in this case, it is necessary for the Court first to resolve whether there was a use of excessive force by the other defendants. Because the plaintiff has stated sufficient facts to survive the review for frivolousness, the failure to protect claim against Sergeant Berrian must be allowed to proceed forward.

### 3. <u>Failure to Protect Claim Against Lee</u>

Grandpre alleges that he reported his safety concerns to Sergeant Lee, and she refused to listen to him or get involved. He asserts that this happened before he was beaten the second time by Sergeant Berrian and the other deputies, and had she acted promptly, he may not have encountered the other officers again.

In the Fifth Circuit, "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 650 (5th Cir. 1996). The standards of liability with regard to providing these basis needs are the same regardless of whether the plaintiff is a pre-trial detainee or a convicted prisoner. *Id.*

Thus, prison officials have a duty to protect inmates from violence while in custody. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Horton v. Cockrell*, 70 F.3d 397, 400–02 (5th Cir. 1995).   To prevail on a failure to protect claim, a prisoner must show that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)).   A prison official is deliberately indifferent to a prisoner's safety where the official is aware of a substantial risk of harm to the prisoner but disregards that risk by failing to take reasonable measures to abate it. *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002) (citing *Farmer*, 511 U.S. at 847).

In this instance, Grandpre has alleged that he placed or attempted to place Sergeant Lee on notice of his perceived danger at the hands of Sergeant Berrian and his deputies.   According to Grandpre, Sergeant Lee actively chose to ignore it and/or voiced her refusal to get involved.   This was in spite of the apparently visible injuries and bleeding treated by the nurses in front of Sergeant Lee.   The claims are sufficient to at least allege that Sergeant Lee was intentionally indifferent to a specific known risk of harm.   Under the circumstances of the case, the Court cannot find at this time that Grandpre's claim is frivolous.   The failure to protect claim against Sergeant Lee should proceed.

## IV.    Recommendation

It is therefore **RECOMMENDED** that Grandpre's § 1983 claims against Nurse James, be **DISMISSED WITH PREJUDICE** as malicious pursuant to 28 U.S.C. § 1915 and § 1915A.

It is further **RECOMMENDED** that Grandpre's § 1983 claims against Sheriff Newell Normand, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Grandpre's § 1983 claims of excessive force against Sergeant Berrian, Deputy McGinty, and Deputy Sill, failure to intervene against Sergeant Berrian, and failure to protect against Sergeant Lee be allowed to proceed and remain referred to the undersigned Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.   *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[16]

New Orleans, Louisiana, this 25th day of October, 2016.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[16]*Douglass* referenced the previously applicable ten-day period for the filing of objections.   Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.